1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9

10

11    KIM DIANE KOENIG,                          CASE NO. C10-5700 RJB

12                        Plaintiff,             ORDER GRANTING IN PART AND
                                                 DENYING IN PART DEFENDANTS'
              v.                                 MOTION FOR PARTIAL
13                                               SUMMARY JUDGMENT
14    CITY OF BAINBRIDGE ISLAND,
      BAINBRIDGE ISLAND POLICE
      DEPARTMENT, STEVEN CAIN,
15
                        Defendants.
16

17          This matter comes before the Court on Defendants' motion for partial summary judgment.

18    Dkt. 27. The Court has considered the pleadings in support and in opposition to the motion and

19    the record herein.

20                           **INTRODUCTION AND BACKGROUND**

21          This civil rights action arises out of the detention and arrest of Plaintiff Kim Diane

22    Koenig (Koenig) for obstructing a police investigation concerning her husband for a possible

23    driving under the influence violation. Dkt. 1. Koenig asserts that she was falsely arrested and

24    physically and sexually assaulted by Bainbridge Island Police Officer Steven Cain (Cain). *Id.*, at

pp. 2. Koenig claims that the municipal defendants, City of Bainbridge Island and the

Bainbridge Island Police Department, ratified the unconstitutional acts of Officer Cain. *Id.*, at pp.

3-4. Koenig also claims the municipal defendants negligently hired, trained, supervised, and

retained Officer Cain. *Id.* Koenig asserts a cause of action under 42 USC § 1983 for the

Defendants' violation of Koenig's civil and constitutional rights, "including her right to free

speech, right to be free of unreasonable searches and seizures, right to liberty, right to be free of

false arrest and detention, right to privacy, right to bodily integrity, right to be free of false and

defamatory accusations." *Id.*, at 2. Koenig asserts state law causes of action, including

negligence, defamation, false arrest and imprisonment, assault, and negligent and intentional

infliction of emotional distress. *Id.*

Defendants seek summary judgment dismissal of claims related to the legality of Koenig's

arrest, violation of First Amendment rights, defamation, and all municipal liability claims

(negligent hiring, training and supervision, custom or policy and ratification). Dkt. 27.

Defendants do not seek dismissal of Koenig's sexual assault and excessive force claims against

Officer Cain. Dkt. 33.pp. 13.

The following facts are construed in Keonig's favor for the purposes of this motion for

summary judgment. Plaintiff Kim Koenig and her husband, John Muenster, are attorneys

licensed to practice law in the State of Washington. Dkt. 32 pp. 6-7, 27-29. On the evening of

September 29, 2007, Koenig and Muenster attended a party at the Filipino Community Hall on

Bainbridge Island. Dkt. 32 pp. 8, 30. Koenig did not have any alcohol at the party but had

consumed "one scotch on the rocks" prior to arrival at the party. Dkt. 32 pp. 8. Muenster

consumed two glasses of red wine at the Community Hall. Dkt. 32 pp. 30.

1        At about midnight, the couple left the Community Hall to go home, with Muenster

2    driving and Koenig in the front passenger's seat. Dkt. 32 pp. 32-33. They turned onto Sportsman

3    Road and Muenster observed a police car. Dkt. 32 pp.33. Muenster noticed a 30 mph speed limit

4    sign and realized the speed limit had recently changed from his current speed of 40 mph to 30

5    mph. *Id.* When the police car put on its red lights, Muenster believed he was being pulled over

6    for speeding. *Id.* He pulled the car over to the shoulder and was approached by Bainbridge

7    Island Police Officer Richard Christopher. Dkt. 28 pp. 4, Dkt. 32 pp. 33-34. Christopher noticed

8    a strong odor of intoxicants coming from the vehicle. Dkt. 28 pp. 4. Christopher asked the driver

9    where he was coming from and how much he had to drink. Dkt. 28 pp. 4. Muenster replied that

10   they were coming from a party and that he had consumed two drinks. *Id.*, Dkt 32 pp. 37.

11   Muenster supplied Christopher with his driver's license, vehicle registration and insurance. Dkt

12   28 pp. 4. Christopher states in his Incident/Investigation Report that he observed the passenger

13   (Koenig) slumped forward and leaning against the front passenger door. He reported that she

14   had a vacant look on her face and that she appeared to be flushed. Dkt. 28 pp. 5. Koenig and

15   Muenster dispute this characterization of Koenig, stating that she was alert and articulate. Dkt.

16   32 pp. 35-36.

17        Christopher asked Muenster if he would mind taking a couple of voluntary tests to help

18   Christopher determine his ability to drive safely. Dkt. 28 pp. 5. Muenster said he wanted to talk

19   with an attorney, that the female passenger was his wife, Kim Koenig, and that she was an

20   attorney. He asked her what he should do. She told him that he should remain silent, exercise

21   his rights and not take any tests. Dkt. 28 pp. 5, Dkt. 32 pp. 10, 37. Christopher stated that her

22   speech was slurred and that she sounded intoxicated. Dkt. 28 pp. 5. Muenster then stated to

23   Officer Christopher that he would not take any tests. *Id.* Christopher asked Muenster to exit the

24

vehicle so he could determine if the odor of intoxicants was coming from Muenster or his wife. *Id.* Once out of the car, Muenster again stated to Christopher that he wanted his wife to represent him. Dkt. 32 pp. 38. Koenig also exited the vehicle with the intention of advising her husband and observing what transpired. Dkt. 28 pp. 5, Dkt. 32 pp. 10-11, 38. Officer Christopher told Koenig to get back into the vehicle. Dkt. 28 pp. 5, Dkt. 32 pp. 11. He stated that Koenig was very loud and that her husband had asked her to represent him and she wished to provide legal advice. Dkt. 28 pp. 5. Christopher then requested that both Muenster and Koenig get back into their vehicle. Dkt. 28 pp. 5. He explained that he did not know them and that for his safety he would not permit them both to be outside the vehicle while he investigated and that he would call for backup. Dkt. 28 pp. 5, Dkt. 32 pp. 11, 39-40. Muenster and Koenig got back in their vehicle and waited a several minutes for another officer to arrive. Dkt. 28 pp. 5, Dkt. 32 pp. 14.

Bainbridge Island Police Officer Steven Cain arrived on the scene. Dkt. 28 pp. 5. Christopher then re-contacted Muenster and asked him to exit the vehicle. *Id.* Muenster and Koenig state that he informed both of them that they could now exit their vehicle. Dkt. 32 pp. 13. Both Muenster and Koenig exited the vehicle. Dkt. 28 pp. 7. Dkt. 32 pp. 13.

Officer Cain's version of the events are recorded in his Incident/Investigation Report, and is as follows:

> Immediately after the male exited, the female passenger got out of the passenger side of the car. I asked her to please remain in the car. She said, "I'm his attorney!" I again asked her to please stay in the car. She refused, saying "I don't have to; he's asked for an attorney." She had a strong odor of intoxicating beverage on her breath, had bloodshot eyes and had slurred speech. She was swaying when she stood up and held onto the open car door. I believed her to be intoxicated.
>
> I told her that if she insisted in getting out of the car, then she needed to stay right next to the open passenger doer and that if she attempted to interfere with the other officer's investigation, she would be arrested for obstructing an officer. I asked her if she understood. She said that she did, but that she was his attorney. She immediately yelled toward Officer Christopher who was speaking with the man and said, "Don't say

anything!' I again told her to stay there and not to interrupt the officer any more or she would be arrested.

I moved away from the vehicle's passenger door and toward the rear of the car to cover Officer Christopher while he spoke with the driver. For a short time the female remained at the open passenger door, watching. She then walked directly toward Officer Christopher and the man, physically closed the gap. She walked right up to Officer Christopher, continuing to try to talk with her husband, saying, "You don't have to say anything to him!'

I advised her that she was now under arrest for obstructing an officer. I told her to turn around so that I may place handcuffs on her. She refused to turn around, so I moved behind her and placed the handcuffs on her. I advised CenCom that I had one in custody. The time was 0012 hrs. I began escorting the woman toward my patrol car by using the escort position of holding her left arm/elbow with my hand; however she refused to move more than about two steps and stopped. I asked her, "Do you understand that you are under arrest?" She said, "But I'm his attorney!" She then began screaming for the man to help her. She attempted to escape me by lunging back toward the man. I had to tighten my grip on her arm/elbow to keep control of her. She refused to walk forward and I told her, "Just walk with me!" She was continually screaming and pulling against me and lunging in different directions. I finally had to pull her along with me, since she refused to walk.

I opened the rear door of the police vehicle and told her to get inside; however she refused to sit down. She stiffened up even more and was screaming at me to let go of her arm. She again was pushing and shoving against me. I placed her against the side of the trunk area holding her in place with my hip while I used my free hand and radioed for another unit to come. She screamed, "He's dry humping me!' I again told her to sit down in the back seat but she refused. I pulled down on her left elbow while pushing down on her upper back and she finally sat down.

Dkt. 28 pp. 7.

Koenig and Muenster dispute much of Officer Cain's version of what transpired. Koenig testified in her deposition that as she exited the vehicle, Officer Cain came running at her, yelling for her to get back into the car. Dkt. 32 pp. 14-16. Muenster testified in his deposition that he saw Officer Cain running toward the location of his wife on the passenger side of their vehicle. Dkt. 32 pp. 41. Koenig testified that she initially did not get back into the car as she was trying to explain to Officer Cain that she was an attorney representing her husband and wanted to observe and take notes. Dkt. 32 pp. 16. Muenster stated it was almost immediately that he

heard Cain inform his wife that she was under arrest. Dkt. 32 pp. 42. Koenig stated that she did not offer any resistance to the arrest. Dkt. 32 pp. 21. Koenig testifies that Cain grabbed her very forcibly and threw her on the top of the hood of their car. Koenig stated that Cain got on top of her and handcuffed her and yanked her down off the car. Koenig testified that Cain then began whipping her handcuffed hands up toward the back of her head. Dkt. 32 pp. 19. Koenig testified that Cain made it impossible for her to walk as he kept throwing her off balance and caused her to fall. *Id*. Instead of letting her get in the patrol car, Koenig testified that Cain threw her on top of the back end of his car and began dry humping her while she screamed for help. Dkt. 32 pp. 23. Koenig testified that Cain then choked Koenig until she involuntarily defecated in her pants. *Id.* It was only then that he put her in the patrol car. *Id.*

Koenig and Muenster were transported to the police station, issued citations, and released. Muenster was issued a citation for negligent driving and notice of infraction for speeding. Dkt. 28 pp. 6. Koenig was issued a citation for obstructing an officer and resisting arrest. Dkt. 28 pp. 24. Apparently, the Kitsap County Prosecutor declined to prosecute on any of the charges. Dkt. 31 pp. 7.

Koenig filed a complaint with the City of Bainbridge regarding Officer Cain's conduct. Dkt. 28 pp. 20. The Bainbridge Island Police Chief assigned the criminal investigation of Plaintiffs allegations to the Puyallup Police Department. Dkt. 28 pp. 20. The Mercer Island Police Department investigated whether Cain violated any internal department policies. Dkt. 21-24. The Puyallup investigation found no evidence of a crime, and the Mercer Island investigation exonerated Officer Cain. Dkt. 28 pp. 20-24. The Bainbridge Island Police Department Chief, Matt Haney, sent notification to Koenig that the two outside agency

1   investigations "determined the allegations be classified as Unsubstantiated." Dkt. 32 pp. 54. Chief

2   Haney stated: "I agree with these findings." *Id.*

3        Koenig subsequently learned that Cain was subject to a previous allegation of sexual

4   impropriety while employed as police officer in 1991. Dkt. 32 pp. 60-64. An investigation of

5   this allegation of sexual assault against Officer Cain was deemed unsubstantiated. Dkt. 30 pp.

6   1-3. The investigation determined that Officer Cain took time off duty to engage in an

7   adulterous affair with the complainant. *Id.* Nonetheless, due to his lack of poor judgment, Cain

8   was demoted from his supervisor position as acting patrol sergeant to that of patrol officer. *Id.*

9        Defendants have filed a declaration of Sergeant Tom Ovens of the Seattle Police

10   Department. Sergeant Owens has 20 years of service as a police officer and has been a police

11   instructor for 18 years. Officer Owens reviewed the incident reports, the deposition of Koenig

12   and the complaint. It is his opinion that under the conditions present at the traffic stop, Officer

13   Cain followed standard police practices and performed in a manner of a reasonable police officer

14   when he arrested Koenig for obstruction for failing to return to the vehicle. Dkt. 29 pp. 1-6.

15                        **SUMMARY JUDGMENT STANDARDS**

16        Summary judgment is proper only if the pleadings, the discovery and disclosure materials

17   on file, and any affidavits show that there is no genuine issue as to any material fact and that the

18   movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is

19   entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient

20   showing on an essential element of a claim in the case on which the nonmoving party has the

21   burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue

22   of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find

23   for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586

24

1   (1986)(nonmoving party must present specific, significant probative evidence, not simply "some

2   metaphysical doubt."). See also Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a

3   material fact exists if there is sufficient evidence supporting the claimed factual dispute,

4   requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty*

5   *Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors*

6   *Association*, 809 F.2d 626, 630 (9th Cir. 1987).

7          The determination of the existence of a material fact is often a close question. The court

8   must resolve any factual issues of controversy in favor of the nonmoving party only when the

9   facts specifically attested by that party contradict facts specifically attested by the moving party.

10  The nonmoving party may not merely state that it will discredit the moving party's evidence at

11  trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect.*

12  *Service Inc.*, 809 F.2d at 630. Conclusory, non specific statements in affidavits are not

13  sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497

14  U.S. 871, 888-89 (1990).

15         Defendants readily concede that Koenig's sexual assault and excessive force claims

16  against Officer Cain must be evaluated by a jury. Dkt. 33 pp. 13.

17                **FALSE ARREST CLAIM AND OBSTRUCTION OF AN OFFICER**

18         Defendants seek of dismissal of Koenig's constitutional claim under 42 U.S.C. §1983 for

19  unlawful arrest and the state law claims for false arrest and false imprisonment. A reasonable

20  arrest is one supported by probable cause. *Brinegar v. United States*, 338 U.S. 160, 175 (1949).

21  Under federal law, probable cause exists where the facts and circumstances within the officers'

22  knowledge and of which they had reasonably trustworthy information are sufficient in

23  themselves to warrant a person of reasonable caution in the belief that an offense has been or is

24

being committed. *Id*. at 175-76. Probable cause is an objective standard, which looks to the totality of the circumstances known to the officers at the time of the arrest. *United States v. Smith*, 790 F.2d 789, 792 (9th Cir. 1986). Probable cause is a complete defense to false arrest claims under both the Fourth Amendment and state law. See *McBride v. Walla Walla County*, 95 Wn. App. 33, 975 P.2d 1029 (1999). In a false arrest action, the rule is that "unless the evidence conclusively and without contradiction establishes the lawfulness of the arrest, it is a question of fact for the jury to determine whether an arresting officer acted with probable cause." *McBride v. Walla Walla County*, 95 Wn.App. 33, 38, 975 P.2d 1029 (1999); *Gurno v. Town of LaConner,* 65 Wn.App. 218, 223, 828 P.2d 49 (1992).

A person is guilty of obstructing a law enforcement officer if the person willfully hinders, delays, or obstructs any law enforcement officer in the discharge of his or her official powers or duties. RCW 9A.76.020(1). The essential elements of obstructing a law enforcement officer are (1) that the action or inaction in fact hinders, delays, or obstructs; (2) that the hindrance, delay, or obstruction be of a public servant in the midst of discharging his official powers or duties; (3) that the defendant knows that the public servant is discharging his duties; and (4) that the defendant knowingly does the action or inaction. *Id*., *State v. Contreras*, 92 Wn.App. 307, 315-16, 966 P.2d 915 (1998).

The failure to respond with alacrity to police orders does not constitute obstruction. *Mackinney v. Nielsen*, 69 F.3d 1002, 1007-1008 (1995). Upon stopping a vehicle for a traffic violation, a police officer may order passengers into or out of the vehicle only if the officer is able to articulate an objective rationale predicated specifically on safety concerns. *State v. Reynolds*, 144 Wn.2d 282, 288, 27 P.3d 200 (2001). The circumstances at the scene of the stop determine whether such an articulable, objective rationale exists. Factors to be considered in

determining whether an officer may direct a passenger at a traffic stop to exit or remain in the

vehicle include, but are not limited to, the number of officers, the number of vehicle occupants,

the behavior of the occupants, the time of day, the location of the stop, traffic at the scene,

affected citizens, or officer knowledge of the occupants. *Id.*, *State v. Mendez*, 137 Wn.2d 208,

220-21, 970 P.2d 722 (1999), *overruled in part on other grounds by Brendlin v. California*, 551

U.S. 249 (2007).

In support of their motion for partial summary judgment, Defendants have provided the

declaration of Tom Ovens, a law enforcement officer with extensive experience, Based upon

Ovens' review of the incident reports, deposition of Koenig and the complaint, it is his opinion

that under the conditions present at the traffic stop, Cain had probable cause to arrest Koenig for

obstructing an officer, and that Officer Cain followed standard police practices and performed in

a manner of a reasonable police officer when he arrested Koenig.

This declaration is of little assistance to the Court, because Ovens construed the facts

most favorably for his clients, the Defendants. Disputed facts must be construed in favor of the

nonmoving party, Koenig.

Although it is undisputed that this traffic stop occurred on a darkened rural road, there

also was a lack of any traffic that would add to safety concerns. Koenig identified herself to

Officer Christopher that she was as an attorney and asked to give advice to Muenster. Muenster

also advised Christopher that his passenger was his wife and an attorney and that he wanted her

advice. Both Koenig and Muenster peaceably complied with Officer Christopher's order that

they both return to their vehicle while he awaited the arrival of a back up officer (Cain). Koenig

advised both Christopher and Cain, when he arrived, that she wanted to stand outside the car to

observe the interrogation, take notes and be available to act as Muenster's counsel. Contrary to

the assertions of the police officers, Koenig and Muenster testify that Koenig was not intoxicated and that she was not approaching Officer Christopher at the time she was arrested by Officer Christopher. Accordingly, these facts are disputed and must be construed in favor of the non-moving party, Koenig.

In *Wilson v. Kittoe,* 337 F.3d 392 (4th Cir. 2003), the Fourth Circuit found that a police officer lacked probable cause to believe that an attorney violated Virginia's obstruction of justice statute when he refused to obey an officer's three orders to leave the scene of the arrest of a neighbor. The attorney attempted to engage the officer in conversation, and the attorney inquired into the well-being of the arrestee, offered his legal services, and peacefully attempted to remind officer of his neighbor's constitutional rights. The attorney was at all times composed, polite, remained at a distance and never attempted to approach either officer or arrestee. *Id.*, at 399-404.

As in *Wilson*, here there is a genuine issue of material fact as to whether Koenig's actions, or inaction, hindered, delayed, or obstructed the DUI investigation of Muenster. Defendants are not entitled to summary judgment on the 42 U.S.C. § 1983 claim for unlawful arrest in violation of the Fourth Amendment or the state law claims for false arrest.

## QUALIFIED IMMUNITY

Defendants assert that Officer Cain is entitled to qualified immunity because "Plaintiffs admitted refusal to comply with Officer Cain's repeated, reasonable commands provided him a reasonable belief that Plaintiff was obstructing the ongoing investigation." Dkt. 27 pp. 13.

The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

1    Here, Koenig had a clearly established constitutional right to be free from an unlawful

2  arrest.  As previously determined, the issue of whether there existed probable cause to make an

3  arrest is a question of fact for the jury.  Construing the disputed facts favorably for Koenig, her

4  conduct would not warrant a prudent person, or one of reasonable caution, in believing that

5  Koenig was committing a violation of the obstruction statute.  See *Wilson v. Kittoe,* 337 F.3d 392

6  (4th Cir. 2003)(police officer is not entitled to qualified immunity when officer did not have

7  probable cause to believe that attorney was obstructing an officer while engaged in an arrest).

8  Officer Cain is not entitled to qualified immunity at this stage because there are disputed issues

9  of fact as to whether probable cause existed to make an arrest.

10                               **MUNICIPAL LIABILITY**

11    Defendants seek dismissal of all municipal liability claims.

12    Pursuant to *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), a public

13  entity defendant cannot be held liable under a theory of *respondeat superior*; rather, a defendant

14  must act as a lawmaker or one"whose edicts may fairly be said to represent official policy."*Id.,* at

15  693.  A plaintiff may establish the policy, practice, or custom requirement for municipal liability

16  under 42 U.S.C § 1983 through proof that (1) a public entity employee committed the alleged

17  constitutional violation pursuant to a formal policy or a longstanding practice or custom, which

18  constitutes the standard operating procedure of the local government entity; or (2) an official

19  with final policy-making authority ratified a subordinate's unconstitutional decision or action.

20  *Avalos v. Baca*, 596 F.3d 583, 587-88 (9th 2010).

21

22

23

24

**Custom and Practice.**

Koenig argues that the City of Bainbridge Island's failure to terminate Officer Cain, in light of his history of sexual misconduct while on duty, proximately caused Koenig's constitutional deprivations. Dkt. 31 pp. 23-24.

This claim lacks a factual basis and is subject to dismissal. Koenig's allegation of a prior incident of sexual misconduct is not only premised on hearsay, it is contradicted by undisputed evidence that Officer Cain was disciplined for the incident and that this conduct (an adulterous affair in 1991) has no correlation to the alleged misconduct in the present action.

**Ratification.**

Koenig asserts that the City of Bainbridge Island ratified Officer Cain's misconduct, evidenced by the fact it approved the results of the investigation, failed to conduct additional investigations, and failed to reprimand and discipline Officer Cain. Dkt. 31 pp. 20.

A municipality may be held liable for a constitutional violation under the theory of ratification if an authorized policymaker approves a subordinate's decision and the basis for it. *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004). A mere failure to overrule a subordinate's actions, without more, is insufficient to support a claim. *Id.*, at 987. The policymaker must have knowledge of the constitutional violation and must make a conscious, affirmative choice to ratify the conduct at issue. *Id.*; *Haugen v. Brosseau*, 351 F.3d 372, 393 (9th Cir. 2003), overruled on other grounds by *Brousseau v. Haugen*, 543 U.S. 194 (2004).

In *Haugen*, a case where an officer (Haugen) shot a suspect who was attempting to drive away in his jeep, the Ninth Circuit held that there were no facts in the record to "suggest that the single failure to discipline Haugen rises to the level of such a ratification." *Id.* at 393. In other words, in order for there to be ratification, there must be "something more" than a single failure to

1   discipline or the fact that a policymaker concluded that the defendant officer's actions were in

2   keeping with the applicable policies and procedures. *Kanae v. Hodson*, 294 F.Supp.2d 1179,

3   1191 (D. Hawaii 2003). As aptly explained by the court in *Kanae*:

4        The law does not say that every failure to discipline an officer who has shot someone is
       evidence of a "whitewash" policy or some other policy of "sham" investigations. The law

5        does not say that, whenever an investigative group accepts an officer's version over a
       victim's differing version, this acceptance establishes a policy for which a municipality

6        may be held liable under § 1983. If that were the law, counties might as well never
       conduct internal investigations and might as well always admit liability. But that is not

7        the law. The law clearly requires "something more."

8   Id. at 1191. See also *Peterson v. City of Forth Worth Texas*, 588 F.3d 838, 848 (5th Cir. 2009)

9   (holding that there was no ratification of use of excessive force where the Chief of Police

10   determined after investigation that the officers complied with department policies); *Santiago v.*

11   *Fenton*, 891 F.2d 373, 382 (1st Cir.1989)(holding that the failure of a police department to

12   discipline in a specific instance is not an adequate basis for municipal liability under a

13   ratification theory).

14       In *Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir. 1991), the Ninth Circuit held that

15   there was sufficient evidence to support the jury's finding that the Chief of Police ratified the

16   excessive use of force against the plaintiffs. The "something more" that was present in *Larez* was

17   an obviously flawed investigation of plaintiff's excessive force complaint. The investigation was

18   conducted by the unit responsible for the alleged constitutional violation and contained holes and

19   inconsistencies "that should have been visible to any reasonable police administrator." *Id.*, at 647.

20   The Chief of Police did not question the investigation but, rather, accepted the results. *Id.*, at

21   635. The unreliability of LAPD investigations was further highlighted by a two-year study of

22   LAPD complaints which showed that it was "almost impossible for a police officer to suffer

23   discipline as a result of a complaint lodged by a citizen." *Id.*, at 647.

24

1    Of a similar vein is *Fuller v. City of Oakland*, 47 F.3d 1522, 1534 (9th Cir.1995), in

2    which the Ninth Circuit concluded that municipal liability by ratification could attach where the

3    chief of police reviewed and approved of an investigation allegedly performed in a sexually-

4    biased fashion because the "grossly inadequate investigation" contained "glaring deficiencies." *Id.,* at

5    1535.

6        Extreme factual situations may also support a finding of ratification as a result of a

7    policymaker's failure to discipline. *Peterson v. City of Forth Worth Texas*, 588 F.3d 838, 848

8    (5th Cir. 2009). For example, in *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir.1985), a

9    case where police officers "poured their gunfire" at the truck and into the person of an innocent

10   bystander, the Fifth Circuit held that based on the fact that no discharges or reprimands followed

11   this "episode of such dangerous recklessness," the jury was entitled to conclude that it was

12   accepted as the way things are done and have been done in the City of Borger." *Id.* at 171.

13       Here, there are no extreme facts or special circumstances that support a finding of

14   ratification. The Bainbridge Island Police Department Chief, Matt Haney, sent notification to

15   Koenig that the two outside agency investigations "determined the allegations be classified as

16   Unsubstantiated." Dkt. 32 pp. 54. Based on this information, Chief Haney stated: "I agree with

17   these findings." *Id.* Chief Haney's agreement with the independent findings that the allegations

18   were "unsubstantiated," does not rise to the level of ratification of Cain's alleged unconstitutional

19   conduct. In other words, Chief Haney did not ratify unconstitutional or wrongful conduct; he

20   ratified conduct he reasonably believed to be appropriate under the circumstances.

21       Koenig's 42 U.S.C. § 1983 claim premised on ratification is subject to dismissal.

22

23       **State Law Negligence Claims**

24

1    Koenig asserts state law claims against the municipal defendants for negligent hiring,

2    training and supervision of Officer Cain.  Dkt. 1 pp. 4-5.

3          In order to establish negligence, Koenig must demonstrate that the Defendants knew, or

4    in the exercise of reasonable care should have known, that Officer Cain presented a risk of

5    danger to others. See *Niece v. Elm View Group Home,* 131 Wn.2d 39, 929 P.2d 240 (1997).

6    Koenig has presented no admissible evidence to support her negligent hiring, supervision or

7    training claims.

8          Koenig's state law municipal liability claims are subject to dismissal.

9                                **FIRST AMENDMENT CLAIM**

10          The First Amendment protects a significant amount of verbal criticism and challenge

11   directed at police officers.  See *Houston v. Hill*, 482 U.S. 451, 461 (1987); *Duran v. Douglas,*

12   904 F.2d 1372, 1377 (9th Cir. 1990).  The First Amendment forbids government officials from

13   retaliating against individuals for speaking out. *Hartman v. Moore*, 547 U.S. 250, 256 (2006);

14   see also *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).  Accordingly, a law

15   enforcement officer who arrests a person in retaliation for being insulted or challenged violates

16   the arrestee's First Amendment rights.  *City of Houston v. Hill,* 482 U.S. at 451, 462-63 (1987);

17   *Duran v. City of Douglas*, 904 F.2d 1372, 1377-78 (9th Cir. 1990).

18          A claim under 42 U.S.C. § 1983 for retaliatory arrest for the exercise of such conduct has

19   three elements: (1) the plaintiff engaged in activity that is constitutionally protected; (2) as a

20   result, he was subjected to adverse action by the defendant that would chill a person of ordinary

21   firmness from continuing to engage in the protected activity; and (3) there was a substantial

22   causal relationship between the constitutionally protected activity and the adverse action.  *Blair*

23   *v. Bethel Sch. Dist.*, 608 F.3d 540, 543 (9th Cir. 2010).  If a plaintiff can prove that the official

24

secured her arrest without probable cause and was motivated by retaliation against plaintiff's protected speech, the plaintiff's First Amendment claim can go forward. *Beck v. City of Upland*, 527 F.3d 853, 863 (9th Cir. 2008).

Considering the disputed facts in favor of Koenig, there is sufficient evidence to show that Officer Cain's motivation in the arrest of Koenig was to silence Koenig and deprive her of free speech rights to challenge the police actions. Although Cain announced that he was placing Koenig under arrest for obstruction of an officer, a reasonable jury could find, based on the record before the Court, that Cain was, at least in part, punishing Koenig for challenging his authority. Summary judgment should be denied on Koenig's First Amendment claim as to Officer Cain.

**DEFAMATION CLAIM**

Koenig's defamation claim states that Officer Cain filed a false and defamatory police report to cover up the true events of October 1, 2007. Dkt. 1 pp. 3. She further claims that Defendants published false and defamatory statements about Plaintiff, including that she was drunk, that she obstructed and resisted arrest. Dkt. 1 pp. 5.

In a defamation case, the plaintiff must establish four elements: falsity, an unprivileged publication, fault, and damages. *Momah v. Bharti*, 144 Wn.App. 731, 739, 182 P.3d 455 (2008); *LaMon v. City of Westport*, 44 Wn.App. 664, 667, 723 P.2d 470 (1986).

Defendants assert that there was no unprivileged publication. First in regard to Officer Cain's Incident/Investigation report, a there exists a qualified privilege based on a common interest in the subject matter being communicated between Officer Cain and the Bainbridge Island Police Department. See *Moe v. Wise*, 97 Wn.App. 950, 957-58, 989 P.2d 1148 (1999).

1    While the qualified privilege generally protects a speaker from liability for statements

2  that might otherwise be considered defamatory, the privilege is lost if the plaintiff can show by

3  clear and convincing evidence that it was abused. *Bender v. City of Seattle*, 99 Wn.2d 582, 600-

4  01, 664 P.2d 492 (1983). A plaintiff can establish abuse of the qualified privilege if the

5  defendant:

6            (1) knows the matter to be false or acts in reckless disregard as to its truth or
            falsity, (2) does not act for the purpose of protecting the interest that is the
7            reason for the existence of the privilege, (3) knowingly publishes the matter to
            a person to whom its publication is not otherwise privileged, (4) does not
8            reasonably believe the matter to be necessary to accomplish the purpose for
            which the privilege is given, or (5) publishes unprivileged as well as
9            privileged matter.

10  *Moe*, 97 Wn.App. at 963 (citations omitted).

11    Here, to defeat the qualified privilege, Koenig must produce evidence that Officer Cain

12  knowingly published the defamatory matter to a person to whom its publication was not

13  otherwise privileged. No such evidence has been presented.

14    Addressing the defamation claims against the municipal defendants, Koenig has not come

15  forth with any evidence that these Defendants made any defamatory communications to persons

16  to whom its publication is not otherwise privileged.

17    Defendants are entitled to summary judgment dismissal of Koenig's defamation claims.

18                              **CONCLUSION**

19    The Court, having considered the motion, response, reply, and relevant documents herein,

20  finds the municipal defendants, City of Bainbridge Island and the Bainbridge Island Police

21  Department, are entitled to summary judgment as to all causes of action asserted against these

22  entities.  Defendant Steven Cain is entitled to dismissal of the defamation claim only.

23    Therefore, it is hereby **ORDERED**:

24

1. Defendants' Motion for Partial Summary Judgment (Dkt. 27) is **GRANTED IN PART AND DENIED IN PART**.

2. All causes of action, federal and state, asserted against the City Bainbridge Island and Bainbridge Island Police Department, are **DISMISSED WITH PREJUDICE**. The defamation action against Defendant Steven Cain is **DISMISSED WITH PREJUDICE**.

3. The causes of action asserted against Defendant Steven Cain under 42 U.S.C. § 1983 for unlawful arrest and detention Under the Fourth Amendment and violation of free speech under the First Amendment may proceed to trial. The state tort claims against Defendant Steven Cain, excluding defamation, may proceed to trial.

Dated this 25th day of August, 2011.

ROBERT J. BRYAN
United States District Judge